**Not for Publication in West's Federal Reporter**
**Citation is Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-1701

UNITED STATES,
Plaintiff,

COMMONWEALTH OF MASSACHUSETTS,
Intervenor, Appellee,

v.

ROY E. ESTY; HOBART B. ESTY; HOWARD T. ESTY,
Defendants, Appellants,

12,367.47 ACRES OF LAND, MORE OR LESS, LOCATED IN ESSEX COUNTY
MASSACHUSETTS,
Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Douglas P. Woodlock, U.S. District Judge]

Before
Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Arthur K. Ross, Jr., with whom Peter M. Ross and Ross and Ross
were on the brief, for Appellants.
Frank J. Teague, Special Assistant Attorney General, and
McCullough, Stievater & Polvere, LLP for Intervenor-Appellee.

February 18, 2004

**Per Curiam**.  Appellants initiated proceedings to gain title to a property fifty-three years after the United States condemned it and nearly forty years after the federal government transferred title to the Commonwealth of Massachusetts.  Their procedural vehicle for this relief is Fed. R. Civ. P. 60(b).  Agreeing with the district court that the appellants' request for relief is too late, we affirm.

**I.**

We provide a brief overview of the historical facts, which are not materially in dispute.  The United States created the Parker River National Wildlife Refuge in Essex County, Massachusetts in 1945 by acquiring property through eminent domain.  See United States v. 12,367.47 Acres of Land More or Less Situated in Essex County, Massachusetts, Civil No. 7010 (D. Mass. Jan. 2, 1945).  Before the government could finish compensating all of the landowners whose property had been taken, Congress passed the 1948 "Exclusion Act," Pub. L. No. 80-579, 62 Stat. 293, to reduce the size of the wildlife refuge.  The Exclusion Act directed the Secretary of the Interior to "dispose of all of the interests of the United States" in certain identified plots of land that had been acquired through the earlier condemnation proceedings.  If the previous owners had already been paid for the property, Section 2(a) of the Act entitled them to regain ownership by returning the funds to the United States.  If the owners had not been paid,

-2-

Section 2(b) directed the Attorney General to return title to the former owners within ninety days or "within such additional period as the court in such proceeding may determine to be necessary to effectuate the purposes of [the] Act."  If the government could not locate the former owners or if title could not be returned under Sections 2(a) or 2(b) for any other reason, Section 2(c) mandated that the property "be disposed of in such manner and at such prices as the Secretary of the Interior may deem to be in the best interests of the United States."  The United States Attorney's office developed a plan, with the district court's approval, for implementing the Exclusion Act.  This plan was designed to return property to any former owner who filed a "stipulation for exclusion," to pay just compensation--as determined by the court-- to the former owners who preferred money instead of their property, and to provide sufficient time to locate the owners whom the government was not able to contact.

The district court, upon motion by the United States Attorney, extended four times (on September 2, 1948; March 1, 1949; September 26, 1949; and March 15, 1956) the deadlines by which former landowners could elect to exclude their property from the taking.  On June 4, 1959, the United States Department of the Interior, exercising its authority under Section 2(c) of the Exclusion Act, sold all of the property covered by the Act but not

excluded by former owners to the Commonwealth of Massachusetts Division of Fisheries and Game.

The property at issue in this case, a 23 acre plot located in Groveland, Massachusetts and referred to by the parties as "Lot 95," was owned by the estate of the late William Merrill prior to the taking by the United States in 1945. The federal government had not compensated Merrill when Congress passed the Exclusion Act in 1948, and the U.S. Attorney had not received an election from the Merrill estate pursuant to the Exclusion Act prior to the June 4, 1959 sale. Therefore, Lot 95 was included with the unclaimed properties that the United States transferred to the Commonwealth in 1959. That land is now included within a wildlife management area operated by the Commonwealth.

In June 1949, more than four years after the United States had acquired title to Lot 95, the Town of Groveland attempted to take title to Lot 95 from the Merrill Estate by purportedly foreclosing a preexisting tax lien on the lot. On June 30, 1949, the town transferred at auction the putative title to the lot to Ralph A. Esty,[1] a town selectman, a life long resident of Groveland, and the owner of the Ralph A. Esty and Sons lumber company. Esty sold the property to his sons, the appellants, in 1953. Although the sons paid taxes on the property for a few

---

[1]Esty had experience with the federal taking and the related exclusion process since, as a town official, he had participated in proceedings to exclude another lot under the Exclusion Act.

years, they stopped paying taxes approximately forty-four years ago.

The appellants failed to object to either the federal taking or the transfer of Lot 95 to the Commonwealth until 1998, fifty-three years after the district court issued its judgment of taking and nearly forty years after the United States transferred title to the Commonwealth. Nevertheless, in 1998, the appellants filed a "Motion to Exclude Lot 95 or to Vacate Judgment Regarding Lot 95" in the district court. The United States, apparently believing that it still owned the property, stipulated to the exclusion without notifying the Commonwealth, and the court issued a Judgment of Exclusion on February 17, 1999.

The Commonwealth subsequently objected to this judgment in a November 8, 1999 letter, stating that it had not received any notice of either the stipulation or the district court action. On May 1, 2001, the United States moved to vacate the Judgment of Exclusion under Fed. R. Civ. P. 60(b), and it entered a joint motion with the Commonwealth to allow the Commonwealth to intervene. The court granted both motions on August 1, 2001. On April 9, 2003, the court granted summary judgment "to the Commonwealth against the claim of the Estys (as set forth in the Estys' 'Motion to Exclude Lot 95 or to Vacate Judgment Regarding Lot 95')." In the body of its opinion, the district court ruled that "[b]ecause the Estys did not have an interest in Lot 95 at the

time of the taking, they may not invoke the Exclusion Act to void the sale of Lot 95 to the Commonwealth. Moreover, I find the period of Exclusion was properly terminated by [the district court] in 1959." In footnote 1 of its opinion, the district court set forth an alternative ground for its ruling:

> Given (a) the length of the Estys' delay, (b) the lack of justification, and (c) the prejudicial disruption of the Commonwealth conservation efforts at the locus for the past more than 40 years, I find no extraordinary circumstances justifying invocation of Rule 60(b) in this setting to divest the Commonwealth of its title in Lot 95.

Although we agree with the district court's analysis of the merits of the Estys' claim in its summary judgment ruling, we choose to focus our brief comments of affirmance on the court's ruling under Rule 60(b).[2]

## II.

Fed. R. Civ. P. 60(b) allows a court "[o]n motion and upon such terms as are just, [to] relieve a party . . . from a final judgment." Pursuant to the subsections of Rule 60(b) not

---

[2]The United States also relied on Rule 60(b) to vacate the Judgment of Exclusion that had been entered before the Commonwealth became involved in these proceedings. The appellants claim that the district court abused its discretion by considering this motion. Since they only dedicated a paragraph to this claim in their appellate brief and failed to develop any argument, we consider this claim to be waived. See United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997) ("We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation.").

limited by the requirement of filing "not more than one year after the judgment, order or proceeding was entered or taken," the motion must be made within a "reasonable time." Fed. R. Civ. P. 60(b)(4)-(6). "What is 'reasonable' depends upon the circumstances of the particular case. The circumstances to be considered include the length of the delay, the justification for it, and the prejudice (if any) associated with the granting of relief." Farm Credit Bank v. Ferrera-Goitia, 316 F.3d 62, 66 (1st Cir. 2003) (citation omitted). The appellants waited thirty-nine years after the United States transferred title to the Commonwealth to file their motion. By any measure, that is an exceptionally long delay. When the appellants finally chose to file their Rule 60 motion, they neither claimed that they were unaware of the Commonwealth's claim of ownership nor that their ability to file this motion in a more timely fashion was impeded in some way. In fact, they failed to provide any explanation or excuse for their long delay.[3] The

---

[3]The appellants try to avoid the need to explain their delay by invoking a specious subject matter jurisdiction argument, apparently on the theory that subject matter jurisdiction can be raised at any time. Subject matter jurisdiction concerns the "'power [of the court] to declare the law'" in the dispute before it. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 7 Wall. 506, 514 (1868)). The appellants argue that the 1948 Exclusion Act stripped the federal district court of the "power to do anything with Lot 95 except exclude it from the taking." This argument does not implicate the district court's subject matter jurisdiction in the 1950s in dealing with Lot 95; it is an ordinary and misguided statutory interpretation argument addressed to the merits of the court's decision.

prejudice to the Commonwealth if it were divested of title to Lot 95 is clear.  It has relied on the title that it acquired from the United States for the past forty-five years, through its operation of a wildlife management area.  In sum, we have seldom seen a weaker claim for 60(b) relief.

**Affirmed.**